Moghtaderi v Apis Capital Advisors (2022 NY Slip Op 03180)

Moghtaderi v Apis Capital Advisors

2022 NY Slip Op 03180

Decided on May 12, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 12, 2022

Before: Gische, J.P., Scarpulla, Mendez, Shulman, Higgitt, JJ. 

Index No. 650287/20 Appeal No. 15933 Case No. 2021-02502 

[*1]Kamran Moghtaderi, Plaintiff-Appellant,
v
Apis Capital Advisors et al., Defendants-Respondents.

The DeIorio Law Group, PLLC, Rye Brook (Donna M. Mulato of counsel), for appellant.
Arkin Solbakken LLP, New York (Deana Davidian of counsel), for respondents.

Order, Supreme Court, New York County (Melissa Anne Crane, J.), entered April 26, 2021, which granted defendants' motion to dismiss the complaint, unanimously modified, on the law, to reinstate the breach of contract and reformation claims against defendants Apis Capital Advisors, LLC and Deki Capital GP, LLC with respect to the definition of Excess Net Income and whether the parties intended to include "customary operating expenses" as part of the Withdrawal Partner payout calculation, and otherwise affirmed, without costs.
Plaintiff brings this action against his former company and partners alleging they miscalculated his Withdrawal Partner payout due to an ambiguity in the Third Amended and Restated Operating Agreement of Apis and the Operating Agreement of Deki (the Executed Agreements), and improperly changed the Income Hurdle Rate (which was used in the payout calculation) after he left the Company.
The breach of contract claim against Apis and Deki should be reinstated, as there is an ambiguity in the Executed Agreements as to the definition of "Excess Net Income" (see GMG Capital Invs., LLC v Athenian Venture Partners I, L.P., 36 A3d 776, 780 [Del 2012]). There are two reasonable interpretations of how to define this term based upon different parts of the Executed Agreements. Section 1.09(a) of Addendum B lists three components used in calculating Excess Net Income: "the aggregate Current Fees received by Apis and Deki for such Fiscal Year, less the aggregate customary operating expenses related to such Current Fees, minus the Income Hurdle Rate for such Fiscal Year set forth on Schedule B hereto." However, Schedule E, which is a spreadsheet prepared by the parties showing how to calculate the withdrawal payments, only includes two components to be used in calculating Excess Net Income: Total Revenue (the aggregate amount of Current Fees received by Apis and Deki for such Fiscal Year), minus the Income Hurdle Rate. Given this ambiguity, the documentary evidence does not conclusively establish a defense as a matter of law with respect to plaintiff's Withdrawal Partner payout.
In addition, under the terms of the Executed Agreements (namely, sections 9.05, 1.02 of Addendum B, and 1.10 of Addendum B), defendants were not permitted to amend the Executed Agreements to resolve the Excess Net Income ambiguity without plaintiff's consent. Defendants' 2017 attempted amendment of the Executed Agreements to resolve the Excess Net Income ambiguity would not apply to the other member defendants, Daniel J. Barker or Eric C. Almeraz, in the same fashion as plaintiff, because neither of them were withdrawn partners at the time.
Plaintiff's breach of contract claim as to the updated Income Hurdle Rate was properly dismissed. Under section 1.09(a) of Addendum B, defendants were permitted to "update" the Income Hurdle Rate from time to time in their sole discretion. The decision to use the word "update" rather than "amend" must be viewed as intentional[*2]. Moreover, the language of section 1.10 of Addendum B shows that the parties chose to ensure certain defined terms were fixed on the earlier of the withdrawal effective date and the date of request or notice of withdrawal. However, Income Hurdle Rate was not included in this list, and therefore, defendants were free to update the Income Hurdle Rate in 2017 from $1.5 million to $2.2 million without obtaining plaintiff's consent.
Plaintiff's reformation claim should be reinstated to allow him the opportunity to prove the contract should be reformed to reflect the allegedly correct payout formula agreed upon by the parties. However, any claim plaintiff may have to reform the Executed Agreements to require an Income Hurdle Rate of $1.5 million without permitting the managing members to "update" such number in their sole discretion was properly dismissed.
Plaintiff's declaratory judgment claim is duplicative of the breach of contract and reformation claims, which can afford full relief, and thus was properly dismissed (see Nationstar Mtge., LLC v Ocwen Loan Servicing, LLC, 194 AD3d 490, 493 [1st Dept 2021]).
Plaintiff's claims as against the individual defendants Barker and Almeraz were properly dismissed pursuant to sections 1.08 and 2.04 of the Executed Agreements. Plaintiff did not plead that Barker or Almeraz engaged in any gross negligence or willful misconduct. Plaintiff's only allegations of bad faith were that defendants exercised bad faith in interpreting the Executed Agreements when calculating the payouts, and defendants improperly changed the Income Hurdle Rate after plaintiff's departure to $2.2 million. Neither of those allegations can be sustained given the language of the Executed Agreements.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 12, 2022